UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:14CV-P600-R

TYRONE RICHARD PAYNE                PLAINTIFF

v.

LOUISVILLE METRO DEPT. OF CORRECTIONS *et al.*      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Tyrone Richard Payne filed the instant *pro se* 28 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court on the initial review of the action pursuant to 28 U.S.C. § 1915A.

Subsequent to the complaint, Plaintiff filed a motion (DN 12) seeking, among other things, an order directing "LMDC to adhere to Medical Prescribed Treatment[.]" The motion alleges that Plaintiff has not received "life-sustaining medication" causing him injury. Because the motion contains factual allegations not made in the complaint, the Court **CONSTRUES** the motion as a motion to amend the complaint and **GRANTS** the motion (DN 12) in part. *See* Fed. R. Civ. P. 15(a)(1). The motion is granted only to the extent that Plaintiff seeks to add factual allegations concerning his medical treatment to the complaint.

For the reasons set forth herein, the Court will dismiss some of the claims, allow several claims to proceed, and allow Plaintiff to amend his complaint with regard to some claims.

## I. SUMMARY OF ALLEGATIONS

Plaintiff is a pre-trial detainee at Louisville Metro Department of Corrections (LMDC). He sues LMDC and the following Defendants who are officials or employees of LMDC: Director Mark Bolton; D. Puckett, a Caseworker Director; Nurse Lucas; and Corrections Officer

Harmon. He sues Puckett and Harmon in their individual and official capacities and sues Bolton and Lucas in their official capacities only.

Plaintiff states that on July 18, 2014, a non-Defendant corrections officer informed Plaintiff that he was being written up because he did not want to be moved to an "open-wing dorm" where he would have to sleep in a top bunk. Plaintiff reports that he walks with a cane and has medical documentation and a yellow armband to show he has permission to use a bottom bunk. He states that he informed the non-Defendant corrections officer that he was having chronic diarrhea "that had blood leaking from my body." Plaintiff states, "I did not want to infect any other inmate with my Blood borne Pathogens." The corrections officer advised Plaintiff to put in an action request form to request cleaning supplies because LMDC was known not to give out cleaning supplies. The corrections officer gave Plaintiff 10 days in segregation instead of the required 20 days due to his medical condition.

Further, according to the complaint, on July 22, 2014, another non-Defendant corrections officer took Plaintiff to another cell, but he states as follows:

> I could not actually move into that cell because after c/o Barnes the Segregation c/o checked it, in the stopped up sink was contaminated water, c/o Barnes could not get the sink from being stopped up, and the toilet was filled with feces. C/o Barnes informed me . . . that I had to remain in that broken cell until a cell came open. I remained in that cell 1 day, all night and moved to another cell on the same floor . . . . I was moved . . . . to do my segregation time, after being in that cell 24 hours.

Plaintiff states that the next night he "began to bleed excessively from my hip area, and a rash appeared upon my skin." The corrections officer called a nurse, who gave him saline to clean the area and gauze to bandage it. He further states:

> Later that day I was sent to the medical Doctor, whom informed me that I had been exposed to unsanitary enviroment ie. such as the broken cell and due to my "Compromised Immune System" I have contacted staph infections and boils to included a skin rash. The Doctor put me on more medications such as antibiotic

"Cipro" and "Bactrum" to help counter-attack the "Staphoccus Infection" and "Boils" that manifested on my body, due to being housed in unsanitary contaminated cell for 24 hours.

As boils broke out over my body and staph sores broke out on my body I was in severe pain! The Antibiotic attacked the infection but the pain remained for several days, as well as the bleeding.

Plaintiff states that he filed two action request forms seeking to appeal his housing classification, which were denied by Defendant Puckett. He states that he "disclosed my medical diagnosis, and informed D. Puckett of my concerns to being housed in an open-wing open-dorm, due to my blood could infect other inmates. D. Puckett blantly denied the requests." Plaintiff states that he asked to be placed in a single-cell unit or remain in segregation "simply because, I am '49' year old male, with a cane to walk, had several accidents during the night due to Chronic Diarreha that contained blood, so I had to constantly change soiled linens and mattress."

Plaintiff further represents that once he was released from segregation, he was placed in a multi-prisoner cell (which he also refers to as an open-wing dorm). Although his medical condition required him to use a bottom bunk, there was no bottom bunk available. He states that he slept one night on the floor and the next day was given a mattress and a "floor-boat to sleep in." He further states:

> My "Staphoccus Infections" began to bleed excessively due to bending up and down on the floor, my leg ruptured and wombs begin bleeding. The LPN rebandaged my wombs and sores and on July 30, 2014, I was moved to 2nd floor medical Dept . . . in a single-cell on the medical floor . . . .

He states that he remained on the medical floor until August 20, 2014. He states that he had been diagnosed with "Compromised Immune System, Staphoccus Infections, Boils, a Rash, Bleeding Ulcers, Bleeding Hemroids, Syncope and Neuropathy in my feet." (Emphasis by Plaintiff omitted.)

Plaintiff further maintains that he was seen by the Psychiatry Department because they wanted to "ensure that I (Plaintiff) was mentally stable under my medical conditions and to ensure I was not suicidal." He represents that the Psychiatry Department put him on two new medications in part to help him gain weight because he was "losing weight excessively." Plaintiff further states that the Psychiatry Department instructed him on August 20, 2014, in front of a non-Defendant corrections officer that Plaintiff "should remain housed in a single-cell on the medical unit and due to being 'raped' in 1985-1986 at the age of 18 years of age a single-cell on these two drugs . . . will prevent me from being in a vulnerable state." He states that despite this, on the same date, Defendant Lucas and two non-Defendant corrections officers transferred him off the medical floor to an open-wing dorm.

Plaintiff represents that Defendant Lucas and LMDC had been giving him diabetic food trays even though he had never been diagnosed with diabetes. Also, he states that, beginning in June 2014, "they began . . . doing/performing Accuchecks upon me, actually sticking my fingers with a lancet until blood pour out and thus checked my blood-glucose levels." He reports that he spoke with the Medical Director who informed him that he could find nothing in Plaintiff's medical chart "to validate or substantiate the Nurses treating me like I am a Diabetic!" He states that his blood glucose levels were normal. He states, "The Medical Department gave me something for the swelling, but irreparable harm was done, my dexterity to hold pens, pencils was ruined it's difficult to write and it hurts due to my dexterity being ruined from finger sticks."

Plaintiff further states that when he was moved out of the medical department to the open-wing dorm, another inmate had to be moved from a bottom bunk so that Plaintiff could have a bottom bunk due to his medical need. He states, "This caused friction between that inmate and his gang vs me . . . ." Plaintiff maintains that the next night his commissary items

were stolen. He states that he requested to be removed from the dorm out of fear of retaliation and "additional assaults."

Plaintiff states that he was then transferred to another open-wing dorm, but no bottom bunks were available. He states that a non-Defendant officer allowed him to use two mattresses due to his medical condition. However, Defendant Harmon, the next shift officer "began harassing me and threatening me. C/o Harmon threaten to do physical harm to me for having two mattresses." He further states, "I tried to explain to c/o Harmon that Sgt. Montgomery gave me permission to utilize two mattresses, but c/o Harmon refused to listen to reason and threaten physical harm, c/o Harmon said, 'Give up the extra mattress or you will be walking on two canes'!"

Plaintiff states that LMDC and the medical staff have "subjected me to cruel and unusual punishment, that has caused me to medically be affected and have housed me in a environment that increases the probability of assaults and disruptive behavior." He also states that he has exhausted his administrative remedies. As relief, Plaintiff requests compensatory and punitive damages.

In Plaintiff's amended complaint, he states the following:

LMDC Medical is not providing prescribed treatment of Inmate's Life-sustaining medication regime, LMDC medical totally neglects the safety and care of Inmate Payne causing him irreparable-harm by administering "incomplete" medical treatment! Inmate Payne has a prescribed medical treatment from a medical authority, but LMDC Jail Medical Dept. has failed to adhere to the prescribed treatment. The incomplete administering of meds given to Inmate Payne has affected his well being, and now he suffers with stomach viruses and Chronic Diareeha that has caused the actual break-down of his skins' integrity!

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any

portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* §§ 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

### III. ANALYSIS

**A.  Claims against LMDC and official-capacity claims**

LMDC is not a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983. *Marbry v. Corr. Med. Servs.*, No. 99-6706, 2000 U.S. App. LEXIS 28072, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to

suit under § 1983); *see also Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983). In this situation, Louisville Metro Government is the proper defendant. *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County itself). Further, Louisville Metro Government is a "person" for purposes of § 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

Moreover, Plaintiff's official-capacity claims against Defendants Bolton, Puckett, Lucas, and Harmon are actually against their employer, Louisville Metro Government. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).

The Court will therefore construe the claims against LMDC and the official-capacity claims against Defendants Bolton, Puckett, Lucas, and Harmon as brought against Louisville Metro Government. When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 120 (1992). The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violations.

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal

policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, Plaintiff makes a variety of allegations against Defendants. However, he has not alleged that Defendants acted pursuant to a municipal policy or custom in causing his alleged harm. Plaintiff's complaint appears to allege isolated occurrences affecting only Plaintiff. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). As nothing in the complaint demonstrates that the Defendants' actions occurred as a result of a policy or custom implemented or endorsed by Louisville Metro Government, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim against it.

Moreover, to the extent that Plaintiff seeks to hold Defendants LMDC, Bolton, or any other Defendant liable because of their supervisory roles, a municipality, "cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v.*

*Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

Therefore, Plaintiff's claim against Defendant LMDC and his official-capacity claims against Defendants Bolton, Puckett, Lucas, and Harmon must be dismissed for failure to state a claim upon which relief may be granted.

**B.      Individual-capacity claims**

*Medical treatment*

Plaintiff claims that Defendant Lucas and other non-Defendants treated him as if he had diabetes, including finger-stick tests of his blood glucose levels, even though he did not have diabetes, causing him injury. He also claims that he was not given "life-sustaining medication" causing him irreparable injury. Construing the allegations as true, as this Court is required to do at this stage, *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488, the Court will allow Plaintiff's claims concerning his medical treatment to proceed past initial review. However, Plaintiff sues Defendant Lucas in her official capacity only. The official-capacity claim is subject to dismissal for the reasons stated herein. Therefore, **the Court will afford Plaintiff an opportunity to file an amended complaint to name Defendant Lucas in her individual capacity and to name any other individual(s) who is/are responsible for the alleged injury resulting from treatment for diabetes and denial of "life-sustaining medication."** *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA.").

*Loss of commissary items*

Plaintiff also claims that his placement back in an open-wing dorm resulted in other inmates stealing commissary items from him because of "friction" over Plaintiff being assigned to a bottom bunk. However, Plaintiff's claim concerning the loss of his personal property does not give rise to a constitutional violation actionable under § 1983. The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981) (*rev'd on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986)). In order to assert a claim for deprivation of property without due process pursuant to § 1983, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *Parratt,* 451 U.S. at 543-44. The law of this Circuit is in accord. For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id.* at 1066. The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985). Thus, Plaintiff's claim concerning the loss of his commissary items will be dismissed for failure to state a claim upon which relief may be granted.

*Verbal harassment and threats*

Plaintiff also alleges that Defendant Harmon harassed him and made threatening remarks to him about Plaintiff using two mattresses in an open-wing dorm. The Eighth Amendment proscribes punishments which involve the unnecessary and wanton infliction of pain. *Whitley v.*

*Albers*, 475 U.S. 312, 319 (1986). However, harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Searcy v. Gardner*, No. 3:07-0361, 2008 U.S. Dist. LEXIS 118217, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). Therefore, the claims alleging verbal abuse and harassment against any of the Defendants fail to state a claim upon which relief may be granted and will be dismissed.

*Unsanitary cell and placement in open dorm*

Plaintiff also alleges that he was placed in an unsanitary cell and in an open-wing dorm without a bottom bunk, both causing him injury. Upon consideration, the Court will allow Plaintiff's claims that he was placed in a cell in unsanitary conditions causing him injury to proceed past initial screening. However, with regard to the claim that he was put in an unsanitary cell, neither of the two corrections officers whom he claims placed him the cell, Officers Earnest and Barnes, were named as Defendants to this action. **Therefore, the Court will afford Plaintiff an opportunity to file an amended complaint with respect to this claim and to name as Defendant the individual(s) who is/are responsible for the alleged constitutional deprivation in connection with placement in the unsanitary cell**. *See LaFountain v. Harry*, 716 F.3d 944 at 951.

The Court will also allow Plaintiff's claim that he was assigned to an open-wing dorm without a bottom bunk causing him injury to proceed against Defendant Puckett in his individual

capacity. It is unclear from the complaint whether Plaintiff alleges that other individuals were responsible for assigning him to an open-wing dorm without a bottom bunk. **Therefore, if Plaintiff alleges that other Defendants are responsible for his injuries with respect to this claim, he may file an amended complaint to name as Defendants any other individuals allegedly involved.** *See id.*

In allowing the claims to go forward, the Court passes no judgment on the ultimate merit.

## IV. ORDER

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Plaintiff's claims against LMDC, his official-capacity claims against Defendants Bolton, Puckett, Lucas, and Harmon, and his individual-capacity claims concerning stolen commissary items and verbal abuse and threats are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that within **30 days** from the entry date of this Memorandum Opinion and Order, **Plaintiff may file an amended complaint with respect to his claims concerning medical treatment, placement in an unsanitary cell, and placement in an open-wing dorm without a bottom bunk.** Plaintiff shall name as Defendants the individuals whom he alleges are responsible for his injuries with respect to these claims and state specifically the factual allegations against them. The Clerk of Court is **DIRECTED** to place the case number and word "Amended" on a § 1983 complaint form and send it, along with four blank summons forms, to Plaintiff for his use should he wish to amend the complaint. Should Plaintiff file no amended complaint within 30 days, the Court will enter an Order dismissing those claims.

The Court will enter a separate Scheduling Order directing service on Defendant Puckett and governing the claim that has been permitted to proceed.

Date:

cc: Plaintiff, *pro se*
 Defendants
 Jefferson County Attorney
4413.010