UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TYRONE RICHARD PAYNE, Plaintiff,

v.  Civil Action No. 3:14-cv-P600-DJH

LOUISVILLE METRO DEPT. OF CORRECTIONS et al., Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Tyrone Richard Payne, proceeding *pro se*, filed a civil-rights complaint under 42 U.S.C. § 1983 alleging a number of constitutional violations while incarcerated at Louisville Metro Department of Corrections (LMDC) as a pretrial detainee. Before the Court is the motion for summary judgment (DN 62) filed by Defendants Cline, Green, and Puckett, through counsel. Plaintiff has responded (DN 65 and 67).[1] Defendants have replied (DN 68). For the following reasons, the Court will grant the motion for summary judgment.[2]

**I.**

In his original complaint (DN 1), Plaintiff alleged that Defendant Puckett assigned him to an unsanitary open-wing dorm without a bottom bunk which caused him injury. He alleged that he informed Defendant Puckett of his concerns about being housed in an open dorm because his "blood could infect other inmates." (Elsewhere in his complaint, he explains that he suffers from a compromised immune system, staph infections, boils, a rash, bleeding ulcers and hemorrhoids, syncope, and neuropathy in his feet.) He alleged that Defendant Puckett "blantly denied the requests." To his complaint he attached two "Action Requests."

---

[1] Plaintiff's two responses (DNs 65 and 67) are virtually identical. However, his response at DN 67 is signed under penalty of perjury.
[2] Other Defendants have been granted summary judgment. Defendants Cline, Green, and Puckett are the only remaining Defendants.

In the first one, dated July 18, 2014, Plaintiff requested "administrative alert" status due to "incidents of assaults in open wing dorm and more importantly for medical condition that has blood-borne pathogens coming out of my physical body daily. I have continuous bleeding that can cause harm to other inmates and could affect other inmates health!" In response, Defendant Puckett wrote that Plaintiff would "no longer be considered for admin seg housing or any other housing placement except population. Each [action request] you send you inform me of some new medical or mental health condition, in which you have been dx by mental/medical staff."

The second Action Request is dated July 23, 2014, and stated that it was an attempt to exhaust his administrate remedies before filing a § 1983 suit. In it, Plaintiff requested to be put back on administrative segregation for his and other inmates' protection. In response, Defendant Puckett stated that this was the third time he had answered this request or one similar to it. Defendant Puckett stated that he would be informing the counselor to no longer grant Plaintiff "an A/R concerning this matter." Defendant Puckett also stated that "having a blood-borne pathogen does not justify placement in S/C."

According to the complaint, after Defendant Puckett "ignored" his housing requests, Plaintiff voluntarily "agreed to remain in segregation a single-cell simply because I am '49' year old male, with a cane to walk, had several accidents during the night due to chronic diarrhea that contained blood, so I had to constantly change soiled linens and mattress." Plaintiff further stated that after 10 days in disciplinary segregation he was moved from the single-cell segregation unit to the third floor where c/o Lynch could not find him a bottom bunk. Because his medical condition required a bottom bunk, c/o Lynch placed him on the floor. The next night Plaintiff was given a mattress and "boat" to sleep in.

Plaintiff states that then his staph infections "began to bleed excessively due to bending up and down on the floor, my leg ruptured and wombs begin bleeding." He states that his wound was rebandaged and he was moved to the medical department "in a single cell as [he] was being treated." His complaint catalogues additional moves to and from single cells and the open wing dorm. Defendant Puckett is not mentioned in the complaint with regard to any of Plaintiff's moves.

Plaintiff amended his complaint to add claims against Defendants Green and Cline in their individual capacities alleging that they retaliated against him for filing a § 1983 complaint by denying him access to call his attorney (DN 24). Plaintiff alleged that "several times I have pleaded with the Correction Officer c/o Green and c/o Cline to put my door slab down so that I can enjoy (privileges) such as be able to use the phone to call my attorney . . . ." He further alleged that that "this issue/concern of being deliberately discriminated against shows that Defendants LMDC in my own opinion are retaliating against [me] just because [I] exercised [my] rights to pursue a 1983 civil action against Defendants LMDC."

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, first, "a party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citation omitted); *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The movant may do so by merely identifying that the non-moving party lacks

evidence to support an essential element of his case for which he has the burden of proof. *See Celotex Corp.*, 477 U.S. at 323; *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1389 (6th Cir. 1993) (per curiam).

The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Carpenter v. Norfolk & W. Ry. Co.*, No. 96-3871, 1998 WL 199723, at *3 (6th Cir. Apr. 16, 1998) ("Once the moving party has proved that no material facts exist, the nonmoving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial.") (internal quotation marks and citation omitted); *Freeman v. Unisys Corp.*, 898 F. Supp. 485, 489 (E.D. Mich. 1995) (citing *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990)). If the nonmoving party fails to do so, summary judgment is appropriate. *See Freeman*, 898 F. Supp. at 490 (concluding that summary judgment was appropriate where nonmovant failed to raise a triable issue of fact).

### *Claim against Defendant Puckett regarding cell assignment*

In the motion for summary judgment, Defendant Puckett argues that Plaintiff has failed to produce any support for his claim relating to his cell assignment. He asserts that according to the inmate classification form submitted by counsel for LMDC attached to DN 14, Plaintiff repeatedly has been moved to different dorms for a variety of reasons. He asserts that "there is no evidence in the record as to how exactly Defendant Puckett intended to harm" Plaintiff by "having anything to do with his housing classification." Defendant Puckett also argues that Plaintiff has provided no basis in law as to why he is entitled to be housed in a single-cell dorm. He further argues that there is no evidence that Plaintiff was "injured in any way from

4

occasionally being housed in an open-wing dorm. Therefore, Plaintiff has failed to prove the requisite elements of a claim for deliberate indifference regarding this allegation[.]"

The inmate classification overview document (referenced in the summary-judgment motion and attached to DN 14) indicates that between May 23, 2014, and October 10, 2014, Plaintiff was moved at least ten times. Most of the reasons for the moves are redacted, although the latest move on this list is given as "for [redacted] medical conditions."

Plaintiff responds that "his simple request to be housed in a single-cell is the same reason LMDC has him housed in a single-cell currently which is due to medical. He only sought to prevent infections to other human beings (i.e. inmates), and get care for his documented medical needs." He further states:

> [Plaintiff] being housed in an open-wing dorm, without a bottom bunk (due to over crowdness) he had to sleep on a floor, then on or in a boat on the floor and up and down from the floor cause wombs to bleed and then being housed in unsanitary cells caused illnesses and disease he never had to endure (*i.e.*, boil, staph, MARSA, shillnelges, infections, and rectum infection) to name a few. He has medical documentation from legal medical authorities from also having underwent rectum operation he was sent to an outside doctor then returned to LMDC, placed into a single-cell dorm. He is correctly housed on medical floor again due to medical condition and currently housed in a single-cell dorm. He simply wanted to have his legal-documented medical condition and no infection to other people be addressed correctly as prescribed by medical authorities.

In reply, Defendants argue that Plaintiff has provided no basis in law as to why he is entitled to single-cell housing nor is there any evidence that Plaintiff was injured from occasionally being housed in an open-wing dorm.

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d

834, 843 (6th Cir. 2002). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." *Sarah v. Thompson*, 109 F. Appx 770, 771 (6th Cir. 2004) (internal quotation marks and citation omitted). Thus, to state a cognizable claim, a prisoner must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quotation omitted).

    The argument that Plaintiff presented to Defendant Puckett in his Action Requests and he presents in his complaint was that he required a single cell to protect other inmates from his blood-borne ailments. He cites to no authority that he has a right to a single cell for the protection of other inmates.

    With regard to his allegations concerning his medical needs, in *Harrison v. Burt*, the Eastern District of Michigan considered a claim of deliberate indifference by a plaintiff who alleged that he needed a single cell because he suffered from a condition requiring frequent enema and bathroom use. No. 07-CV-11412, 2008 WL 4450286, at *13-14 (E.D. Mich. Sept. 29, 2008). That court found that:

6

> Plaintiff is unable to establish that defendants were deliberately indifferent to his medical needs. At the outset, it is questionable whether a serious medical need is involved at all. Although plaintiff was required to frequently use the bathroom as a result of his condition and to give himself enemas, he does not allege that he was denied the ability to do either by prison officials. Rather, plaintiff was denied only the right to do so in a single occupant cell. Although plaintiff was at times given a medical detail for a single cell, there is no evidence in the record that a single cell was medically necessary to treat his condition.

*Id.* at *13.

In *Winburn v. Davis*, No. 08-14996, 2009 WL 3004555, at *3 (E.D. Mich. Sept. 16, 2009), the plaintiff alleged deliberate indifference when "the supervisory nurses did not authorize a single inmate cell for him to facilitate self-catheterization without offending or annoying his cellmates." The district court found that "Plaintiff's belief that Defendants should have chosen a different course of treatment with respect to his housing assignment amounts to a mere difference of opinion," and because "[m]ere differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. . . . Plaintiff failed to allege a series of facts which, if proven, 'would rise to the level of the serious deprivation and deliberate indifference.'" *Id.* (quoting *Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004)).

For the same reasons, the Court finds that here Plaintiff has not shown more than a disagreement with his housing assignment. The Court will not second guess the medical judgments made concerning Plaintiff's cell assignment for his medical needs. *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Moreover, Plaintiff has not offered any evidence that his injuries were caused by being housed temporarily in an open-wing dorm. Plaintiff has not shown that Defendant Puckett was responsible for the instances in which he was housed in a bottom bunk, which is the only circumstance of the open-wing housing assignment which

7

Plaintiff links to causing his wounds to bleed. Therefore, Defendant Puckett is entitled to summary judgment on this claim.

### *Claim against Defendants Cline and Green regarding retaliation*

Defendants Cline and Green argue that they are entitled to summary judgment in their favor on the only claim that Plaintiff alleged against them, *i.e.*, his claim that they prevented him from calling his attorney as retaliation for having filed a § 1983 claim. They state that Plaintiff's pretrial memorandum does not reference or indicate any evidentiary support for this retaliation claim. They also assert that Plaintiff has refused to respond to Defendants' written discovery requests seeking information regarding this claim. They further argue that "it would be impossible for either Officer Green or Officer Cline to deny Payne access to his attorney. Phones are accessible to inmates in the jail on a virtually continuous basis."

In response, Plaintiff stated that the "majority of the times, excluding weekends, his hour recreation time out was 2:00 am to 3:00 am on third shift." Plaintiff further asserts, "their is no one, especially an attorney's office [open] during those third shift hours." He further asserts that he is housed in a single cell due to medical concerns (shingles) on the medical floor at LMDC. He states that an inmate housed in a single cell on the medical unit must first ask the on-duty correctional officer "and the phone is then with a long cord attached put into the Inmates cells or used through an opened food-tray slot in their single cell. So phones are not accessible to inmates in jail on a virtually continuous basis."

That response also states that, because Plaintiff is *pro se*, "in order to research and shepardize law cases and include cited-law cases, he has to sign up threw a caseworker to get put on a list that is available only twice a week of '1' hour for each inmate on the list." He further explains that:

8

> [t]his service is for the kiosk, a small computer that suppose to have on it current law, but it is available on third-shift during the hours of 2:00 am to 4:00 am. If your name is on the list, and the list is not full, then you may get called out of your sleep approximately 2:00 am to 4:00 am for one "1" hour to spend on the computer to research law.

In reply (DN 68), Defendants Cline, Green, and Puckett state that Plaintiff admits in his response to their summary-judgment motion that he was given phone access during his recreation hour. Citing DN 65-7.

In order to succeed on a retaliation claim, Plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Filing a civil-rights complaint is protected conduct. *See Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011). With regard to the second prong, Plaintiff does not allege that he is unable to contact his attorney at all or that his attorney is unable to call, mail, or visit him. However, assuming without deciding for purposes of this Memorandum Opinion that not allowing Plaintiff, a pretrial detainee, to call his attorney (presumably his criminal defense attorney) is an adverse action for purposes of a retaliation claim, Plaintiff has not shown sufficient evidence that it occurred to require submission of this issue to the jury.

Plaintiff has given no facts about how Defendants Cline and Green denied him access to the phone, how many times that occurred, or how he was harmed by it. He explains that in the medical unit an inmate must ask the on-duty correctional officer who then brings the phone on a long cord. He does not state that he made requests for the phone which were refused by either

9

Defendant Green or Cline or that during those times he was not housed in a single cell he was unable to use the phone.

Furthermore, Plaintiff concedes that he was able to use the phone during his one-hour of recreation time per day. It appears from his summary-judgment response that the reason his recreational hour occurred in the early morning hours was because he chose to request to use the computer kiosk, which apparently was only available during those hours. Defendants cannot be faulted if Plaintiff chose to use his recreation hour this way. Moreover, in Plaintiff's response, he concedes that this recreational time did not always occur during the early morning hours, but only the "majority of the times."

Finally, Plaintiff has offered no evidence that the alleged conduct by Defendants Green and Cline was motivated by Plaintiff filing a § 1983 complaint. In short, Plaintiff has not presented evidence to support a triable issue of fact on this claim.

For these reasons, the Court finds that Defendants are entitled to summary judgment on this claim.

### III.

For the foregoing reasons,

**IT IS ORDERED** that Defendants' motion for summary judgment (DN 62) is **GRANTED**.

By separate Judgment, the Court will dismiss this action.

Date:   September 16, 2016

David J. Hale, Judge
United States District Court

cc:    Plaintiff, *pro se*
       Counsel of record
4415.009